UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROBERT ARUTIUNOV,<br><br>Petitioner,<br><br>v.<br><br>WARDEN *et al.*,<br><br>Respondents. | CAUSE NO. 3:26cv622 DRL-SJF |

OPINION AND ORDER

Immigration detainee Robert Arutiunov, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is unlawfully confined in violation of the laws or Constitution of the United States.

Mr. Arutiunov is a native and citizen of Russia who entered the United States at a port of entry on December 29, 2021 [7-1]. United States Customs and Border Patrol (CBP) issued a notice to appear, charging him as removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien applying for admission without valid entry documents [7-2]. The notice labeled Mr. Arutiunov an "arriving alien." On February 17, 2022, CBP released Mr. Arutiunov into the country for a one-year period of humanitarian parole under 8 U.S.C. § 1182(d)(5) [1-2; 1-3; 1-4]. The parole notice informed him that his parole would automatically terminate at the end of the one-year period unless United States Immigration and Customs Enforcement (ICE) in its discretion gave him an extension [1-3].

Mr. Arutiunov applied for asylum and withholding of removal [1-5]. He also sought and received employment authorization; and, in July 2025, he applied to renew this

application [1-8; 7-1]. On April 30, 2026, ICE agents revoked his parole status and arrested him pursuant to an administrative warrant outside his home in Illinois [7-1; 7-3].[1] On June 2, 2026, an immigration judge ordered Mr. Arutiunov removed to Russia and denied his applications for relief, including asylum [14]. Mr. Arutiunov appealed to the BIA, and this appeal still pends [14-1, 16-1].

He is currently detained at Miami Correctional Facility. In his habeas petition, he argues that he is being unlawfully detained without the possibility for bond under 8 U.S.C. § 1225(b)(2). He argues that § 1225(b)(2) does not apply to him because he is not "seeking admission" within the statute's meaning. He asserts that § 1225(b)(2) applies to people arriving at ports of entry, whereas he was released into the country on humanitarian parole and apprehended within the interior of the country years later. He seeks release from custody or a prompt bond hearing, arguing that his continued detention violates applicable statutes and regulations, as well as Fifth Amendment due process. In response, the government says Mr. Arutiunov is properly detained as an arriving alien under § 1225(b)(2) because he was released into the country as a humanitarian parolee and re-detained after his parole was revoked.

As a preliminary matter, Mr. Arutiunov was ordered to show cause why every respondent but the Miami Correctional Facility Warden, the only respondent who exercises "day-to-day control" over him, should not be dismissed under *Kholyavskiy v. Achim*, 443 F.3d

[1] It is unclear whether ICE extended Mr. Arutiunov's one-year period of humanitarian parole beyond its scheduled expiration date in February 2023. His notice to appear says his parole status was revoked the day of his arrest on April 30, 2026 [7-1]. In either case, the parties agree that Mr. Arutiunov's parole was no longer in effect once he was arrested on April 30, 2026.

946, 952 (7th Cir. 2006). Relying on *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the court of appeals concluded the proper respondent in an immigration habeas case challenging the constitutionality of a petitioner's confinement is the warden of the facility where the petitioner is being held, not a supervisory official who has the authority to free the petitioner. *See also Doe v. Garland*, 109 F.4th 1188, 1192 (9th Cir. 2024); *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3rd Cir. 2021). Mr. Arutiunov does not address this issue in his response. Therefore, these additional parties will be dismissed. For clarity, the court refers to the responding party as the Warden from this point forward.

Some issues regarding detention under the Immigration and Nationality Act have been thoroughly examined in this court, and in many other courts across the country. Our circuit recently joined a majority of courts in concluding that 8 U.S.C. § 1225(b)(2) does not apply to noncitizens who are not otherwise "seeking admission" within the statute's meaning. *Cirrus Rojas v. Olson*, 183 F.4th 909, 915 (7th Cir. 2026); *see also De Jesús Aguilar v. English*, No. 3:25cv898, 2025 WL 3280219 (N.D. Ind. Nov. 25, 2025) (Leichty, J.); *Singh v. English*, No. 3:25cv962, 2025 WL 3713715 (N.D. Ind. Dec. 23, 2025) (Leichty, J.); *Mejia Diaz v. Noem*, No. 3:25cv960, 2025 WL 3640419 (N.D. Ind. Dec. 16, 2025) (Brisco, J.); *cf. Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828 (7th Cir. 2026) (reading as a 2-1 decision in the result only and at times as a 1-1-1 decision in the rationale).

The Warden (through his federal counsel) repeats his arguments from prior cases that the court lacks jurisdiction over the petition and that Mr. Arutiunov's detention is authorized by § 1225(b)(2). For reasons given before, the court continues to be of the view that jurisdiction is secure insofar as this opinion goes. *See Aguilar*, 2025 WL 3280219 at 3. The

separate question is whether there is anything unique here that would warrant a different conclusion than that reached in *Cirrus Rojas* as to § 1225(b)(2)'s scope. The Warden argues this case is distinct because, unlike the petitioners in those cases who were arrested within the interior of the United States, Mr. Arutiunov was initially detained at a port of entry, classified as an arriving alien, released into the country on humanitarian parole, and re-detained after his humanitarian parole was revoked.

The INA provision regarding humanitarian parole permits the government to parole a noncitizen temporarily:

> The Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit *any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien* and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served *the alien shall forthwith return or be returned to the custody* from which he was paroled *and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission* to the United States.

8 U.S.C. § 1182(d)(5)(A) (emphases added). Implementing regulations further provide that the "term *arriving alien* means an applicant for admission coming or attempting to come into the United States at a port-of-entry," and an "arriving alien remains an arriving alien even if paroled pursuant to [§ 1182(d)(5)(A)], and even after any such parole is terminated or revoked." 8 C.F.R. § 1001.1(q); *see also* 8 C.F.R. § 212.5(e)(2)(i) (when "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole").

Mr. Arutiunov acknowledges that his humanitarian parole was revoked when he was re-detained, and he concedes he continued to be an "arriving alien" by regulation once his parole was revoked. He argues that this case nonetheless falls within the scope of *Cirrus Rojas* and his detention should be governed by § 1226(a) rather than § 1225(b)(2) because, though he may have been an "applicant for admission," he was not "seeking admission" to the United States at the time of his re-detention within the meaning of § 1225(b)(2).

Section 1182(d)(5)(A) and its implementing regulations establish that, when the government granted humanitarian parole, Mr. Arutiunov's custody changed but not his legal status. Humanitarian parole gave him access to the interior of the United States beyond his port of entry, but not "admission" as the immigration scheme defines it. His notice to appear echoed, at the time of his parole, that he was consistently treated as an "arriving alien." When his parole expired, he continued to be an "arriving alien," and his case needed to be handled "in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A); *see also* 8 U.S.C. § 1225(b)(2); 8 C.F.R. § 1001.1(q) ("The term arriving alien means an applicant for admission").

But that does not end the inquiry today—for it begs the question whether Mr. Arutiunov was also "seeking admission" to be classified under § 1225(b)(2).[2] Our circuit joined a number of other courts (though not all) in concluding that § 1225(b)(2) does not apply to noncitizens when they are not "seeking admission" within the statute's meaning.

[2] *See also Saidov v. Jamison*, 2026 WL 789087, 3 (E.D. Pa. Mar. 20, 2026) (concluding that an alien granted humanitarian parole at a port of entry and later arrested in the interior was not properly detained under § 1225(b) because he was not "seeking admission" at the time of his arrest); *accord Bellia Castillo v. Olson*, 2026 WL 1894096, 6 (N.D. Ill. July 1, 2026) (same); *Bashir K. A. v. Klang*, 2026 WL 452353, 7 (D. Minn. Feb. 17, 2026) (collecting cases).

*Cirrus Rojas*, 183 F.4th at 915; *see also Aguilar*, 2025 WL 3280219 at 6-8 (explaining that not every "applicant for admission," as that term of art is defined by Congress, is "seeking admission"); *Singh*, 2025 WL 3713715 at 5 ("In short, under § 1225(b)(2), an alien must be an 'applicant for admission,' and the alien must be 'seeking admission,' and an examining immigration officer must determine that this alien 'is not clearly and beyond a doubt entitled to be admitted' for mandatory detention to occur under this subsection.").

For now, the issue is settled. The ordinary meaning of "seeking" in § 1225(b)(2) "connotes 'an affirmative step of search or pursuit,'" so it requires present conduct directed toward obtaining admission to the United States. *Cirrus Rojas*, 183 F.4th at 918-22; *see also Castañon-Nava*, 175 F.4th at 846-47 (Lee, J.) ("applicant for admission" describes a status, whereas "seeking admission" requires affirmative conduct directed toward lawful entry). "In some contrast, the phrase 'seeking admission' describes, not merely one's status, but the activity of one trying to gain admission—that is, lawful entry into the United States." *Singh*, 2025 WL 3713715 at 5. All § 1182(d)(5)(A) says is Mr. Arutiunov is an applicant for admission (a defined term of art), not whether he is "seeking admission" within § 1225(b)(2)'s meaning.

The government's position thus falters for two reasons. First, Mr. Arutiunov was not "seeking admission" when he was re-detained, nor seems to be doing so now. Unlike the petitioner in *Cirrus Rojas* who entered the United States without admission or parole, thereby making that petitioner outright "inadmissible" under the INA, *see Cirrus Rojas*, 183 F.4th at 920; *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1239 (10th Cir. 2026), Mr. Arutiunov secured humanitarian parole and retained some right to seek admission. Temporary lawful status (parole) and admission are "distinct concepts in immigration law." *Sanchez v.*

*Mayorkas*, 593 U.S. 409, 415 (2021). He was not "admitted" to be sure, but he was not in the United States unlawfully. Thus there may be or have been a possibility for him to seek admission, *see* 8 C.F.R. § 1240.8(b), but no one today establishes that he was or is in fact doing so. What he instead pursues, at least on this record, is asylum and withholding of removal. Seeking either isn't seeking admission. *Cirrus Rojas*, 183 F.4th at 920 and n.6.

Second, though the court appreciates the government's point about Mr. Arutiunov's status as an arriving alien, the government reads too much into this. Section 1182(d)(5)(A) restores the parolee's "custody" and likewise his "status" by requiring that he be continued as an "applicant for admission." 8 U.S.C. § 1182(d)(5)(A). The regulations likewise reconfirm his "status" upon revocation of his parole as an "arriving alien" (synonymous with an "applicant for admission"). 8 C.F.R. §§ 212.5(e)(2)(i), 1001.1(q). But decisions from our circuit and this court have explained that one's "status," equally as an arriving alien or an applicant for admission, leaves unanswered the question of one's activity of seeking admission.

In short, none of this speaks directly, or perhaps better said, entirely, to the legal basis for his ongoing detention—namely, whether he is seeking admission to qualify for mandatory detention under § 1225(b)(2) as he might have been when he first arrived at a port of entry (the government's position) or whether he is not seeking admission such that he must be detained thereafter under § 1226(a) with the opportunity for a bond hearing (the petitioner's position). To be clear, neither side argues that § 1182 alone governs anything more than his return to custody; in other words, no one says this statute alone serves as the basis for his ongoing detention. And that makes sense. *See Clark v. Martinez*, 543 U.S. 371, 385-86 (2005) ("nothing in [§ 1182(d)(5)(A)] affirmatively authorizes detention, much less

indefinite detention," and thereafter looking to § 1231(a)(6) because the removal period had expired). The argued choice is between two other statutes. As established in *Cirrus Rojas*, *Aguilar*, and *Singh*, that choice returns to the question of whether Mr. Arutiunov is seeking admission. He isn't, so it can't be § 1225(b)(2). It must be § 1226(a).[3]

Perhaps the better argument, but one not made by the government, would be that Mr. Arutiunov could not even have achieved humanitarian parole without seeking admission; after all, the statute makes such parole available only to an "alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Query then, in the restoration of his status upon revocation of his parole, whether he once more must be deemed to be an "alien applying for admission to the United States"—in other words, "seeking admission." This is where § 1182(d)(5)(A) is silent. Indeed, appreciating the term of art that is "applicant for admission," and the precise definition Congress gave that term, the statute never restores a noncitizen to his activity of seeking admission; and doing so on this record would ignore the reality that Mr. Arutiunov is doing no such thing.

This may not be surprising because after some time on humanitarian parole, even if temporary, circumstances and options for a noncitizen may be different. To this point, a

[3] Nor does the INA treat the historical fact of parole as though it disappears once parole terminates. If restored in status, one might think that, in effect, Mr. Arutiunov would revert to one who seeks asylum at a port of entry. But not so, for two reasons. For one, § 1225(b)(1)(A), which addresses asylum requests at a port of entry, distinguishes a noncitizen who "has not been admitted or paroled into the United States" from one who has, so that statute seems less the option for one who has been given parole. For another, § 1182(d)(5)(A) never says to treat a parolee, upon return to custody, as though parole never occurred; indeed, it directs his treatment as an applicant for admission, with the basis for his detention to be addressed by other options—§ 1225(b)(2), or § 1226(a), or § 1231(a)(6), or perhaps, given circumstances arising during parole, § 1226(c). As written, parole is an event with continuing statutory significance even after parole has ended. The simple reality, too, is that today the parties only debate § 1225(b)(2) and § 1226(a).

noncitizen detained after the revocation of humanitarian parole is situated more like any other noncitizen already present in the United States. After residing here for years, humanitarian parolees may develop substantial ties to the country. The statutory scheme permits them to do so by seeking adjustment of status, obtaining employment authorization, and receiving federal public benefits. Against this backdrop, it would make little sense to permit bail for other noncitizens who lacked access to these lawful avenues of integration, and indeed who remained in the country unlawfully, while categorically withholding bail from noncitizens whose presence in our country was lawful insofar as parole lasted.

In short, § 1182(d)(5)(A) answers two questions—whether a humanitarian parolee on revocation must return to custody (yes) and whether he must be treated in status as an applicant for admission after his parole (yes)—but defers to another statute the government's authority to continue to detain him thereafter, with several options available. Nothing in § 1182(d)(5)(A) says the basis for that detention must be § 1225(b)(2). *See, e.g., Clark*, 543 U.S. at 385-86. Because Mr. Arutiunov is not "seeking admission," only asylum and withholding of removal, it cannot be § 1225(b)(2). Because he is not a "criminal alien," it cannot be § 1226(c). And because he is not subject to a final order of removal, it cannot be § 1231(a)(6). It is instead, and by simple recognition of the warrant too, § 1226(a).

ICE arrested Mr. Arutiunov pursuant to a warrant [7-3]. Section 1226(a) expressly contemplates the arrest of a noncitizen "[o]n a warrant issued by the Attorney General," and *Cirrus Rojas* relied in part on the fact that its petitioner had been arrested pursuant to warrant in concluding that § 1226(a) "squarely appl[ied]." *Cirrus Rojas*, 183 F.4th at 925; *accord*

*Martinez v. Hyde*, 810 F. Supp.3d 135, 148 n.34 (D. Mass. 2025). The warrant's stated authority points in the same direction: it was issued under INA § 236, codified at § 1226.

All this leads the court to § 1226(a), the "default rule" for detention of noncitizens who are "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226(a) provides that, on a warrant, "an alien may be arrested and detained" while removal proceedings are pending, and the Attorney General "(1) may continue to detain the alien; and (2) may release the alien on (A) bond . . . or (B) conditional parole" until removal proceedings conclude. 8 U.S.C. § 1226(a). The court, as it always does, begins with the statute's plain language. It is permissive, not mandatory, and it affords an election (insofar as the limitations in § 1226(c) do not apply of course). *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526-27 (2021); *Jennings*, 583 U.S. at 306. A noncitizen detained pursuant to a warrant may be released by the Attorney General (subject to certain statutory limitations that no one argues apply here), or he may be detained pending a decision on whether he will be removed from the United States.

The Attorney General has delegated this discretion by regulation—first, to specified immigration officers who may "release an alien not described in [§ 1226(c)(1) (regarding criminal aliens)], under [bond or conditional parole]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). That is called an initial custody determination. After that initial custody determination, a noncitizen may apply to an immigration judge for a custody redetermination, and the immigration judge is authorized to exercise the authority in § 1226

"to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released." 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1); *see also* 8 C.F.R. § 1003.19 (detailing procedures for custody or bond redeterminations by an immigration judge). When a noncitizen files this motion, an immigration judge, under immigration court rules, must "in general" schedule a "hearing for the earliest possible date," though in "limited circumstances" the immigration judge may rule on a bond redetermination request without a hearing. Immig. Ct. Practice Manual § 8.3(d). A noncitizen may appeal a decision relating to bond and custody determinations to the Board of Immigration Appeals. 8 C.F.R. §§ 236.1(d)(3), 1236.1(d)(3).

Both noncitizens and the government alike must comply with our immigration laws, as they are written and as they must work within constitutional demands. *See, e.g., Zadvydas v. Davis*, 533 U.S. 678, 701 (2001); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). The government has predetermined the procedures that apply to noncitizens who are arrested and detained under § 1226, and due process requires merely that these procedures be fairly given, not taken away. *See Accardi*, 347 U.S. at 266-68; *see, e.g., Jideonwo v. I.N.S.*, 224 F.3d 692, 697 (7th Cir. 2000); *Montilla v. I.N.S.*, 926 F.2d 162, 166 (2d Cir. 1991). Mr. Arutiunov gives no reason to believe this process is insufficient. Absent something else, the court will order no more and no less than what is expected of immigration officials by law. *See Accardi*, 347 U.S. at 268; *see also United States v. Nixon*, 418 U.S. 683, 696 (1974) ("So long as this regulation [delegating Attorney General's discretion to a Special Prosecutor] remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it.").

The court has the same expectation of compliance for the petitioner—follow the rules. It appears Mr. Arutiunov did not seek a custody redetermination before an immigration judge before filing his petition. When "exhaustion of administrative remedies is not statutorily mandated," "sound judicial discretion governs" whether it must be done. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (citation omitted). A court may require administrative exhaustion in § 2241 cases challenging a noncitizen's detention as a matter of judicial economy and administrative comity. *Id.* at 1017. Exhaustion isn't a bar here. First, the government has not argued it. Second, no one should presume that the request would have been anything but futile when this debate about § 1182 percolated. The appropriate remedy is to put the ball in his court to file for custody redetermination in his removal proceedings, with the benefit of a finding from the court that he is not categorically ineligible for bond under § 1225(b)(2) and instead must be treated under § 1226(a). The court likewise must deny immediate release because Mr. Arutiunov has not met his burden of showing his current detention unlawful under § 1226(a).

He argues that the court should require the government to bear the burden of proving that he should not be released at any forthcoming custody redetermination hearing, whereas under existing procedures "[t]o secure release, the alien must show that he does not pose a danger to the community and that he is likely to appear for future proceedings." *Johnson*, 594 U.S. at 527; *see also* 8 C.F.R. § 236.1(c)(8) ("alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding"). It is not the court's job to rewrite the law. And his argument is effectively premature, indeed unripe, when no one can say how

the government may proceed. If he is given a custody redetermination hearing, he may in fact prevail; and, if not, he has administrative remedies available to challenge an adverse ruling. *See Z.G. v. Olson*, 834 F. Supp.3d 794, 802-05 (N.D. Ind. 2026) (requiring exhaustion of administrative remedies in context of immigration bond determination). Without a prior denial on the merits alleged to be erroneous, the court leaves the parties to follow their process under § 1226(a).

For these reasons, the court:

(1) DISMISSES Todd Blanche, Attorney General of the United States; Markwayne Mullin, Secretary of the United States Department of Homeland Security; Todd M. Lyons, Acting Director of United States Immigration and Customs Enforcement; and Matthew Putra, Field Office Director of the United States Immigration and Customs Enforcement Chicago Field Office as respondents;

(2) DENIES AS MOOT petitioner's motion to expedite [15];

(3) DENIES the petition [1], except to FIND that Robert Arutiunov must be classified under 8 U.S.C. § 1226(a), including for purposes of any custody redetermination; and

(4) DIRECTS the clerk to enter final judgment and to close this case.

SO ORDERED.

November 19, 2026

*s/ Damon R. Leichty*
Judge, United States District Court